**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|   |   |
|---|---|
| In re:<br><br>BMI OLDCO INC., *et al*.,[1]<br><br>            Debtors<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br><br>            Appellant | Civil Action No. 4:25-cv-_____<br><br><br>Bankruptcy Case No. 23-90794 (MI) |

**MOTION FOR LEAVE TO APPEAL ORDER ON MOTION TO DISMISS**

Pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned Chapter 11 cases of BMI Oldco Inc. and Barretts Ventures Texas LLC (together the "**Debtors**"), by and through undersigned counsel, hereby respectfully moves this Court for leave to appeal the Dismissal Order[2], which is an interlocutory order entered by the United States Bankruptcy Court for the Southern District of Texas Houston Division (the "**Bankruptcy Court**"), a copy of which is attached hereto as Exhibit A. In accordance with Bankruptcy Rule 8004(a), a notice of appeal per Bankruptcy Rule 8003(a) concerning the Dismissal Order is being filed contemporaneously with this Motion.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) (8715) ("BMI") and Barretts Ventures Texas LLC (0787) ("BVT"). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038. The Debtors' ultimate parent is Minerals Technologies Inc. ("MTI"). Debtor BMI is a wholly owned subsidiary of Specialty Minerals Inc. ("SMI").

[2]    The "**Dismissal Order**" shall refer to the ruling issued by the Bankruptcy Court on April 29, 2025 denying the Committee's Motion to Dismiss, as evidenced by the minute entry at Docket No. 1438.

Notwithstanding, the Committee reserves its right to amend this filing in the event the Bankruptcy Court later issues a formal order outlining its findings of fact and conclusions of law.

1

**PRELIMINARY STATEMENT**

1.      As demonstrated by the overwhelming evidence adduced at the April 14-15, 2025 hearing on the Committee's dismissal motion, the continued prosecution of these Chapter 11 cases serves no legitimate bankruptcy purpose and these cases must be dismissed.

2.      Despite having no operating business or employees, the Debtors continue willfully lingering in bankruptcy – costing creditors millions in ongoing professional fees each month – for the sole reason of obtaining extra-legal, final resolution of **direct** and derivative liability to non-debtors (human beings suffering from Mesothelioma and other disease) for their non-debtor parent company, MTI.  MTI, a multi-billion-dollar public company commenced this litigation strategy to cut-off victims' Constitutional rights; it intends to prolong this already nearly 20-month hiatus from accountability, reap the entire benefits of bankruptcy as if it had sought its protection itself, without incurring any of the corresponding burdens.

3.      None of this should come as a surprise given MTI's complete dominance over the Debtors and the striking lack of independence between the entities. The Bankruptcy Court expressed grave concerns regarding the Debtor's lack of independence and apparent subjugation to MTI at trial.[3]  Regrettably, rather than issue a dismissal order as the natural conclusion to be drawn from the evidence at trial, the Court instead fashioned a remedy for the Debtors and MTI, out of whole-cloth, that serves no proper bankruptcy purpose and is in direct opposition to the interests of the Debtors' creditors and estates.[4]  More to the point, for this appeal, the evidence

---

[3]    Apr. 15, 2025 Hr'g Tr. 324:18-25 ("I hear you, and you hear me. And I'm going to make a very hard decision sometime in the next few days, and I don't want it to be based on a total lack of confidence that I might have in whether there has been and will be an aggressive posture to try to get this case resolved."); 463:12-18 ("I will note that all of the conduct that you [the Debtors] have taken aggressively has been against the people on the right side of the room [the Committee], and none of the aggressive conduct has been against people on the left side of the room [the non-debtor affiliates]. That is my concern.").

[4]    *See Case Management Order* [Docket No. 1411] (Bankruptcy Court, sua sponte considering (i) ordering that a determination be made in this case of whether any of the talc sold by the Debtor or any of its affiliates contained

adduced at trial demonstrated that the Debtors are, as expected, a puppet of MTI, which makes an equitable case resolution near impossible under the present circumstances.

4. At this juncture, the continuation of these Chapter 11 cases flies directly in the face of the equitable principles underlying the Bankruptcy Code, serves only to progress MTI's goal of obtaining relief that, ultimately, a bankruptcy court will be unable to give them, and is a gross abuse of the bankruptcy process. For these reasons, the Committee urges the Court to grant leave to appeal the Dismissal Order.

## QUESTION PRESENTED

5. Is dismissal of these Chapter 11 cases warranted under 11 U.S.C. 1112(b) considering (i) the Debtors' efforts to prosecute these cases for the sole benefit of MTI; (ii) the Debtors' inability to confirm a Chapter 11 plan at all (let alone within a reasonable time period); and (iii) the continuing losses imposed upon the Debtors' estates without any chance of rehabilitation?

## RELIEF REQUESTED

6. By this Motion, the Committee respectfully requests that the Court grant leave to appeal the Dismissal Order. As set forth herein, the Committee has satisfied the requirements for interlocutory review of the Dismissal Order, which raises a clear, discrete and important question of law based on undisputed facts.

7. The Bankruptcy Court's Dismissal Order is inconsistent with the plain reading of 11 U.S.C. § 1112(b), which mandates dismissal of these Chapter 11 cases when certain conditions are present. As set forth more fully below, the overwhelming evidence presented at trial establishes the requisite cause for dismissal.

---

asbestos; and (ii) if the Court does so order, recommending that the reference be withdrawn by the District Court for a determination of that single issue.

8.      For these reasons, the Committee seeks entry of an order, substantially in the form attached hereto as Exhibit B, pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3) granting leave to appeal the Dismissal Order.

## ARGUMENT

9.      Section 158(a) of title 28 of the United States Code grants the United States District Courts jurisdiction to hear appeals from interlocutory orders issued by a Bankruptcy Court at their discretion. 28 U.S.C. § 158(a)(3) (noting that a District Court shall have jurisdiction to hear appeals "from interlocutory orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 157").

10.     Courts in the Fifth Circuit look to the factors set forth in 28 U.S.C. § 1292, which defines the scope of appellate jurisdiction over interlocutory appeals from the district courts. *In re Royce Homes LP*, 466 B.R. 81, 93 (S.D. Tex. 2012).

11.     When deciding whether to grant leave to appeal under Bankruptcy Rule 8004, courts consider factors which include whether: "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation." *Id.* (internal citations and quotations omitted).

12.     As articulated below, because each of these factors weighs squarely in favor of granting leave to appeal, this Court should grant the Committee's motion for leave to appeal the Dismissal Order.

### I.      The Question Involved is One of Law.

13.     The first factor considered in deciding whether to grant leave to appeal is whether "the question involved is one of law." *In re Royce Homes LP*, 466 B.R. at 94 (citing *In re Gray*,

4

447 B.R. 527, 533 (E.D. Mich. 2011). In the context of an interlocutory appeal, "the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Id.* (citing *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 673 (S.D.N.Y. 2011)).

14.    Here, the facts are not in dispute. Indeed, the unconverted evidence presented at trial establishes that:

a.    The Debtors have no employees[5];

b.    The Debtors have no mining operations[6];

c.    The Debtors' have no operating business at all.  Rather, they each own single asset real estate acquired pre-petition to anchor a bankruptcy case once their actual business assets were sold.  Under the triple-net leases to two fast food restaurants, the tenants are responsible to pay all expenses associated with the properties.[7]

d.    Notwithstanding the minimal work involved with such triple-net leases, for several months, the Debtors were remitting upwards of $60,000 monthly to MTI under a shared services agreement despite the properties generating less than $20,000 in monthly lease revenue.[8]

e.    The Debtors continue accruing millions in administrative expenses without any source of operating cash, depending instead on financing from non-debtor parent MTI[9];

---

[5]    Apr. 15, 2025 Hr'g Tr. 345:16-23.
[6]    Apr. 14, 2025 Hr'g Tr. 96:02-06.
[7]    Apr. 14, 2025 Hr'g Tr. 96:07-97:04.
[8]    Apr. 14, 2025 Hr'g Tr. 98:10-12; 99:17-25.
[9]    Apr. 15, 2025 Hr'g Tr. 400:02-25; 436:23-437:04.

f. That financing is *pari passu* with the liabilities owed to the Debtors' unsecured creditor body, potentially diluting their recoveries[10]; and

g. All of the Debtors' corporate officers are employed by MTI, and MTI personnel would routinely attend the Debtors' board meetings and act in capacities for both entities simultaneously[11].

15. The Debtors (and MTI for that matter) have not disputed – and in good faith cannot dispute – these facts. Accordingly, the question before the Court of whether the current circumstances warrant dismissal is one purely grounded in law, and the first factor therefore militates toward this Court granting the requested leave.

## II.     The Question is Controlling.

16. The second factor courts consider is whether the legal question is controlling. *In re Royce Homes LP*, 466 B.R. at 94. A "controlling question of law" is present where "reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 673 (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005)); *see also Dorsey v. Navient Sols., Inc.*, No. CIV.A. 15-2898, 2015 WL 6442572, at *2 (E.D. La. Oct. 23, 2015) ("If reversal of the bankruptcy court's decision would result in dismissal of the action, the issue of law is controlling.").

17. Here, a ruling that dismissal is warranted would, at its core, terminate the bankruptcy case in the Southern District of Texas, thereby satisfying the second factor to grant leave.

---

[10]    Apr. 14, 2025 Hr'g Tr. 141:07-12.
[11]    *See generally* Apr. 14, 2025 Hr'g Tr. 36:06-95:09.

**III.     There is a Substantial Ground for Difference of
Opinion Respecting the Correctness of the Bankruptcy Court's Decision.**

18.     The third factor requires courts to consider whether the controlling question of law is one where "there is a substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision." *In re Royce Homes LP*, 466 B.R. at 94. A question that presents a substantial ground for difference of opinion is present where "the issue is difficult and of first impression." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 673.

19.     The Bankruptcy Court's ruling is unprecedented.

20.     The Committee is wholly unaware of any case (and the Debtors have cited none) where a non-operating debtor was effectively permitted to remain in bankruptcy *indefinitely* (at the direction of, and funded by, its non-debtor parent – through unsecured debt funding that is dilutive of unsecured creditors), and in the face of substantial evidence demonstrating the non-debtor's control of the Debtors. As the Committee has reiterated, the precedent being set by these Chapter 11 cases raises significant concerns, and opportunistic debtors/non-debtors will assuredly take note moving forward if such behavior is tolerated by the judicial system.

21.     Moreover, MTI's and the Debtors' insistence on prosecuting these cases to provide sweeping 524(g) protections to MTI (and other non-debtors) for their independent tort liability flies directly in the face of recent precedent from the Fifth Circuit which flatly rejected the notion that such relief is available under Section 524(g). *See In re Red River Talc LLC*, Case No. 24-90505 (Bankr. S.D. Tex. Mar. 31, 2025) [Docket No. 1425] at p. 48 ("Section 524(g)(4)(A)(ii) does not, however, enjoin claimants from seeking to recover against nondebtors based on liability wholly separate from the debtor's liability or not dependent on it."); *see id*. at 49 ("If a [third party] is alleged to have committed an independent act, and state or federal law gives claimants a right to pursue a separate claim against [third party], § 524(g) may not enjoin the claim.").

7

22.     Aside from the fact that section 524(g) simply cannot provide the Debtors and MTI the relief they are seeking, the record demonstrates that, in any event, the overwhelming creditor opposition to the issuance of a 524(g) injunction renders the Debtors unable to achieve the requisite support for any such plan.

23.     Further, in recognition of the legal and voting infirmities of the proposed 524(g) plan, the Debtors' and MTI's new attempted evasion of section 524(g) through a conflicted settlement of "estate" claims (*i.e.*, testing claims, which are the very same independent claims carved out from the Bankruptcy Court's preliminary injunction order[12]) is likewise problematic on several fronts.

24.     In essence, such a "settlement" would: (i) have MTI act as both plaintiff (purportedly bringing forth the full and individual harms suffered by its own dead and dying Mesothelioma victims) and defendant; (ii) sidestep Congress's mandate, especially concerning given that Congress has repeatedly rejected attempts to enact asbestos-related tort reform[13], and (iii) operate to provide unlawful non-consensual third-party releases[14]. It goes without saying these

---

[12]    *See Order (I) Declaring That the Automatic Stay Prohibits Certain Actions Or, in the Alternative, (II) Preliminarily Enjoining Such Actions Pursuant to 11 U.S.C. § 105* [Adv. Pro. No. 23-03225, Dkt. No. 92] at ¶ 2 ("Any Talc Action in which a BMI Affiliate is named as a defendant is stayed as against such BMI Affiliate(s) through and until April 1, 2024, subject to extension by agreement or court order; ***provided however that pursuit, adjudication, and/or settlement of claims against MTI and SMI seeking recovery from MTI and/or SMI solely on account of such entity's purported actions in connection with any alleged inadequacy of testing of talc mined, beneficiated, and/or sold by BMI (a "Testing Claim") is not stayed at this time.***") (emphasis added); *see also* Dec. 8, 2023 Hr'g Tr. 139:17-25 ("I find that it is -- with respect to the standards for an injunction, that particular injunction, that it is unlikely that ultimate relief would be granted or cause the Debtor, very recently issued an indemnity for those issues to an entity that may have its own direct claim against it[.] That the 524(g) statute most likely interpretation of that is that this relief will not be ultimately available.").

[13]    *See, e.g.,* The Fairness in Asbestos Injury Resolution Act of 2005, S. 852, 109th Cong.; Fairness in Asbestos Compensation Act of 1999, S. 758, 106th Cong.; Asbestos Compensation Act of 2000, H.R. 1283, 106th Cong.; and Asbestos Claims Criteria and Compensation Act of 2003, S. 413, 108th Cong.

[14]    *See Harrington v. Purdue Pharma, L.P.* 603 U.S. 204, 207 (2024) (stating that the Bankruptcy Code does not "authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.").

8

are the forms of inequity the Bankruptcy Code was designed to prevent against, and continued prosecution of these Chapter 11 cases are a clear abuse of the bankruptcy system.

25.     For these reasons, the third factor supports granting the Committee's requested leave.

### IV.     An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation.

26.     The final factor is whether an immediate appeal would advance the termination of litigation. *In re Royce Homes LP*, 466 B.R. at 94. In evaluating this criterion, "a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013) (quoting *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).

27.     As with the second factor discussed above, an immediate appeal here would assuredly progress the ultimate disposition of this litigation. On one hand, if the Bankruptcy Court's ruling was overturned and these Chapter 11 cases dismissed, tort claimants would simply return to their desired forum of the tort system to exercise their legal and Constitutional rights.

28.     On the other hand, if the Bankruptcy Court's Dismissal Order was affirmed and these cases remain in Chapter 11, the parties would assert their rights in the context of Chapter 11. The parties could focus on addressing other issues developing in the case, which the Committee believes will ultimately demonstrate why these cases represent an abuse of the bankruptcy system.

29.     Aside from resolving this threshold issue (which may potentially result in the wholesale dismissal of these Chapter 11 cases), an immediate appeal would likewise, at the very least, also simplify several issues should these cases remain in bankruptcy, including without

limitation, the issue of good faith of the Debtors and MTI, at the timing of the filing through the date of the dismissal hearing.

30.    Accordingly, the Committee submits that the fourth factor to grant leave is satisfied.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that this Court enter an order granting leave to appeal the Dismissal Order and granting such other and further relief as is just and proper.

Respectfully submitted,

**BROWN RUDNICK LLP**

/s/ *David J. Molton*
David J. Molton (*pro hac vice*)
Jeffrey L. Jonas (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801
Email:        dmolton@brownrudnick.com
              jjonas@brownrudnick.com
              egoodman@brownrudnick.com
              gcicero@brownrudnick.com

-AND-

**CAPLIN & DRYSDALE, CHARTERED**

Kevin C. Maclay (*pro hac vice*)
Todd E. Phillips (*pro hac vice*)
Kevin M. Davis (*pro hac vice*)
Wendy J. Barnett (SDTX No. 3631223)
1200 New Hampshire Ave NW, 8th Fl.
Washington, DC 20036
Telephone:    (202) 862-5000
Facsimile:    (202) 429-3301
Email:        kmaclay@capdale.com
              tphillips@capdale.com

10

kdavis@capdale.com
wbarnett@capdale.com

**COUNSEL     FOR     THE     OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

## CERTIFICATE OF SERVICE

I certify that on May 13, 2025, I caused a true and correct copy of the foregoing document to be served by the Court's CM/ECF notification system, which will send notice of electronic filing to all counsel of record.

/s/ *Gerard T. Cicero*
Gerard T. Cicero

11

**EXHIBIT A**

| | | |
|---|---|---|
| 04/29/2025 | 1438 | COURTROOM MINUTES. TIME HEARING HELD: 1:28 PM-3:40 PM. APPEARANCES: JEFF JONAS FOR THE AD HOC COMMITTEE. CLAYTON LAYNE THOMPSON FOR AMELIA MORENO AND CERTAIN OTHER MESOTHELIOMA CLAIMANTS. VIANEY GARZA FOR THE US TRUSTEE. RYAN M. BARTLEY FOR INTERESTED PARTY FUTURE CLAIMANTS' REPRESENTATIVE. CHRISTOPHER KIPLOCK FOR MINERALS TECHNOLOGIES INC. AND SPECIALTY MINERALS INC. SANDER ESSERMAN FOR FUTURE CLAIMANTS. THE COURT HEARD ORAL ARGUMENT. THE MOTION TO DISMISS 994 WAS DENIED FOR REASONS STATED ON THE RECORD; FINDINGS OF FACT AND CONCLUSION OF LAW WILL BE ISSUED WITHIN THE NEXT 21 DAYS. AN ORDER WILL BE ISSUED REGARDING REPORT AND RECOMMENDATION TO THE DISTRICT COURT BY NEXT WEEK. (RELATED DOCUMENT(S):1411 ORDER SETTING HEARING) (ACJ4) (ENTERED: 04/29/2025) |

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | |
| BMI OLDCO INC., *et al.*,[15] | Civil Action No. 4:25-cv-_____ |
| Debtors | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | Bankruptcy Case No. 23-90794 (MI) |
| Appellant | |

**ORDER GRANTING FOR LEAVE TO APPEAL ORDER ON MOTION TO DISMISS**

Came Before the Court the Motion for Leave to Appeal Order on Motion to Dismiss (the "**Motion**") filed by the Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned cases. The Court, having found that good and adequate notice of the Motion was given, and it appearing that no other or further notice need be provided; it appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT**

The Motion is granted in all respects, and the Committee is granted leave to appeal the Motion to Dismiss.

IT IS SO ORDERED

---

[15] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) (8715) ("BMI") and Barretts Ventures Texas LLC (0787) ("BVT"). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038. The Debtors' ultimate parent is Minerals Technologies Inc. ("MTI"). Debtor BMI is a wholly owned subsidiary of Specialty Minerals Inc. ("SMI").

Signed: _____, 2025

_____
Presiding Judge